Thank you, Your Honor. Amy Van Horn for Plaintiff Appellant. Your Honors, in this case, we again have two main issues. The first is that the treating physician opined that plaintiff can only reach occasionally, and the ALJ did not discuss or reject this limitation. In fact, the ALJ stated that the treating doctors had given no limitations in the arms, so the ALJ evidently wasn't aware of this evidence. So the first issue is that the ALJ needs to address this evidence and either accept it or reject it. And it's particularly important because, in this case, the ALJ found that due to plaintiff's borderline intellectual functioning, she can only do simple routine work, which generally means that you're going to be sitting doing something with your hands all day. What was the limitation? Occasional reaching. Okay, would that be consistent with light duty? It depends on the job. Did the doctor say that the plaintiff could do light duty work? He said that she could lift 20 pounds occasionally and 10 frequently, so in terms of what she could lift, that would be consistent with light duty. And so didn't the ALJ say that she could do light duty? Yes, but the ALJ didn't give any limitations in the use of her hands. But if the doctor said that she could do light duty and the ALJ agreed, why would the ALJ have to amplify it? Well, light duty encompasses a range of different things. One of the requirements is that you can lift 20 pounds occasionally and 10 pounds frequently. But in addition, her treating doctor said that she can only reach occasionally, and that is something that the ALJ needs to ask a vocational expert, which jobs require this ability, because some light jobs require it and some don't. So when EDS doctors or any doctor completes one of these forms where he says what you can do, it's not just how much you can lift, but whether you can push, pull, lift, reach, use your hands over and over again for fine movements. And her treating doctor did fill out such a form, and the ALJ ignored some of the limitations. So, therefore, he hasn't offered all of her limitations to the vocational expert. What limitations besides the reaching occasionally are you asserting that the ALJ ignored? Just occasional reaching. And as I said, the reason it's so important is he found she can only do simple routine work, which is by definition repetitive, and it's going to be physical using her hands. Repetitive doesn't necessarily mean reaching, does it? It depends on the job. We don't know because he didn't offer this limitation to the vocational expert. We simply don't know whether these jobs require it or not. How is reaching defined? I don't know that it's more extensively defined. I know that they sometimes distinguish between reaching overhead and reaching. This one just said reaching. Is your argument that the ALJ was required to specify limitation on reaching in this question to the VE because there might not be jobs in the economy at all for somebody who has that limitation on reaching, occasionally during eight-hour days? Is that what you're saying? No, that's not my position. Well, then why does it matter? Because we don't know whether someone who has that limitation can do the jobs that the ALJ identified. The ALJ has to give the plaintiff's limitations to the vocational expert because the ALJ is not a vocational expert, and there's no way to know whether someone with her limitations can do these jobs unless he presents those limitations to the VE. It may be that there are jobs she could do, but we don't know that because those limitations were not presented to the VE. You mean that specific limitation? That's right. There was an overall instruction or question. That is, the question to the VE included the overall exertional limitations that were specified in the examination. So the VE knew about the exertional limitations. Not that one. Not that specific. Right. The VE did say that someone who couldn't use their hands repetitively for more than one-third of the day could not do any of the jobs that the ALJ identified. But that was not a limitation that was placed on this claim. Right. I'm not saying that that meets this. I'm just saying that there definitely is a lot of hand and arm usage in any of the jobs she's going to find that she can do. Is there evidence of disability in this case? Is there a diagnosis that would support a finding of disability? Right elbow and shoulder tendinitis. She's had tennis elbow surgery on both of her elbows. Well, there's a diagnosis in the record, right? Yes. Of tendinitis in the right shoulder. Right shoulder and elbow tendinitis. Well, is that a disabling condition? Not necessarily. I wouldn't think so. But for someone who- You can watch people walking up and down the street with tendinitis in their arm and shoulder. Absolutely. It depends on- The reason that I say it's so important in this case is because she has mental limitations too and she has borderline intellectual functioning. So she's only going to be able to do physical repetitive work, such as assembly work, and that work requires a lot of uses with your arms. If she could do some different kind of job, if he wasn't finding that she could only do routine, simple, repetitive work, then it would be a different story. The second main issue is the ALJ's rejection of the examining psychologist, Calkins. Which doc is that? Calkins. He found that she has a GAF of 50. And I'm sorry, let me- That's at ER191. He found that- He specifically stated, it could be hoped that with medication and her becoming reengaged in therapy, that her psychiatric problems may lessen significantly in the not-too-distant future. It may be that she would be able to return to work, at least in terms of her psychiatric symptomatology later this year. That's at page 13 of the opening brief and ER191. Now, the ALJ construed this opinion to say that she could work, and that's simply not what he's saying. He's saying if she reengages in therapy, if these numerous things occur, then she might be able to work. And the ALJ picked things out of his opinion, the doctor's opinion, that he said that cognitively she would be able to work, meaning even though she does have limitations in simply intellectual functioning, aside from her psychological problems, those wouldn't keep her from working. But doesn't the act specify that disability has to be for at least 12 months? Absolutely, but she's asserting an onset of September 27, 1998. Well, but what you're saying is the psychologist said that she'd be able to go back within a few months if she does the therapy. So that's not a condition that's disabling for 12 months or more. Well, if it began in September 1998 and this opinion is in July 2000, then it has lasted for well over a year. And he's not sure that it's going to stop. This is if these numerous things happen, then there's no proof in the record subsequent to that that they have. So the ALJ misrepresented this opinion when he construed it to say the plaintiff can work. If there are no further questions, I'll reserve the rest of my time. Good morning. Excuse me. Good morning, Your Honors. May it please the Court. Richard Rodriguez with the Commissioner. I don't think that we dispute the fact that Ms. Hamblin has obtained a diagnosis. However, under the Social Security regulations, a diagnosis in and of itself is not indicative of a severe impairment. There must be significant limitations that arise from that impairment. Here we had at least two doctors who examined the claimant, one a treating physician, one a consultant examining physician, both who opined that there was nothing physically wrong that they could find upon their examinations that would prevent this person from performing some type of work. The ALJ also noted that the claimant's own testimony was inconsistent with the limitation attributable to her hands or any shoulder or upper extremity impairment. She testified that she was able to do keyboarding for four hours a day with no difficulties while attending training. She reported hobbies that included fishing, reading, drawing. Those could be found in the excerpt of Record 139 through 144. Her mother, who provided a third-party statement, indicated that she plays cards, that she does needlework. She also testified that she did crocheting and went for extensive walks, all which supported the ALJ's finding that her upper extremity limitations were non-severe and did not produce any significant limitation in her ability to work. What about the psychologist's opinion? The psychologist's opinion? The ALJ? Excuse me. The one the counselor just referred to. The psychologist's opinion that the counselor just referred to. Oh, so Dr. Calkins' opinion? The ALJ looked at Dr. Calkins' opinion and provided appropriate limitations that flowed from it in his RFC. As you noted, Dr. Calkins was of the opinion that this person would be able to return to work within a few short months of obtaining proper therapy and medication treatment and management. Dr. Schneider, who was an examining psychologist who saw the claimant earlier during this process, actually diagnosed very minor and non-severe limitations, gave her a global assessment of functioning of 68, which was indicative of a person with only mild symptoms. And the ALJ, in analyzing the medical evidence, chose to accept the lesser restrictions when he formulated his RFC. What about the contention that the vocational expert was not asked to consider the limitation on occasional reaching and coming to an opinion on what jobs were available in the economy? Well, the ALJ is the one who is ultimately responsible for establishing an RFC. Upon his analysis of the medical evidence, Drs. Wilson and Drs. Rendleman, who opined that there was no limitation physically for this claimant, he also looked at Dr. Lee's opinion, and that's where he arrived at his weight limitations. He didn't accept the occasional reaching. And in fact, if you looked at Dr. Lee's report at ER, I believe it's ER 205, you'll see that she didn't give any limitations in upper extremities. She gave no limitations on manipulation, on feeling, on doing fine fingering work. There's no evidence to support that occasional limitation. Well, if you look at that report, it's internally inconsistent. I don't know what the doctor was thinking about when it was filled out. But, for example, postural limitations, the block is checked, none established. But if you go down into the limitations section, crawling can never be done, which seems to me is a postural limitation, which is inconsistent with the blanket decision that there were no postural limitations established. Same thing on manipulative limitations. None established is the first box. But you get down to the sub boxes, reaching in all directions, including overhead, occasionally. So we can't say that the doctor, Dr. Lee, didn't find some limitations on manipulation. No, you can't say exactly. But the ALJ wasn't required to accept that opinion. He had two contradicting opinions that said there were no limitations. And because of the inconsistencies in Dr. Lee's report, it further eroded any credibility it may have had in regards to that. Did the ALJ need to specifically reject it and give a reason? No, he didn't have to do that, Your Honor. By summarizing the medical evidence in detail and the facts, as he did in this case, noting the extensive hobbies, the fishing, the needlework, the crocheting, the keyboarding, the two negative opinions from an examining and a treating physician, you can infer from that analysis that he was not going to fully accept Dr. Lee's opinion. He accepted the more credible limitations, which were the weight limitations, and declined to accept that occasional reaching limitation. Did he reject the occasional reaching limitation from your perspective? From my perspective, yes, he did. He didn't accept that finding. And what in the ALJ's opinion leads you to that conclusion? Well, his extensive referral and analysis of Dr. Rendleman's and Dr. Wilson's opinions, who stated that there was nothing there. The fact that the claimant had testified that she was able to keyboard, the fact that she was involved in activities inconsistent with the degree of limitations she said she had. So wouldn't your position be easier if he didn't reject the opinion of Dr. Lee implicitly? If he didn't reject it? I think, Your Honor, it would have been better if he had come out and explicitly rejected it. But if he didn't, then what are we left to do? If he didn't implicitly reject it, then we're left to infer that he rejected it. Well, the ALJ is the one who has to resolve the ambiguities. He looked at all the evidence. He saw that there were two doctors who found no limitations, and he saw that there was one doctor who had some limitations. And it was his evaluation and his analysis of that evidence that is what's key in this case. And his case law says if something, if the physician's opinion is rejected or findings are rejected, it has to be done explicitly. There is no inferential rejection. But it can be done so in summarizing the medical evidence and the facts, as was done in the case of Thomas. In case authority. Thomas, I wrote that case. I know that, Your Honor. And in that case, the ALJ did not properly, was alleged to not properly reject the opinion of this doctor. But because his factual summation and his analysis of the rest of the medical record were sufficient, it was determined by you that it was good enough. I'll have to reread that. If you have nothing further. Thank you. Thank you, Your Honor. It's not the case that the ALJ rejected this opinion by Dr. Lee either explicitly or not specifically. In fact, the ALJ specifically stated that the claimants treating doctors have given her no specific restrictions against repetitive use of her arms and hands. That's at page 9 of his opinion ER40. And that clearly shows that he didn't see that opinion in the record. So he's not rejected it. He's not considered it. I didn't look at it that way. I looked at it as he saw it, but he didn't see that he was rejecting it in evaluating all of the evidence. That's kind of how I viewed it, that he, the ALJ, viewed his opinion as being consistent with what Dr. Lee said about the reaching. But the ALJ didn't give any limitations in her hands. Or in her arms, I'm sorry. You wouldn't necessarily have to give limitations if you can occasionally reach. You wouldn't have to necessarily give limitations if the light-duty jobs are consistent with that. But in order to know, he never asked the vocational expert whether those jobs were consistent with occasional reaching. That is a argument. And the ALJ does need to specifically reject treating physicians. Only if it's being rejected. Exactly. Yes. Do you read the Thomas case? Same way opposing counsel. I'd have to reread it again. I'd have to reread it. That's all I have, Your Honor. Thank you. All right. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case I'm giving account of argument is Department of Labor v. Grayson. Thank you.
judges: T.G. Nelson, Rawlinson, Pollak